## Chester B. Dike

### vs.

## Hiram Pool et al.

The jury found a verdict for plaintiff, notwithstanding an instruction given at defendants' request, which, in effect, withdrew from them, questions of fact, which they must have passed upon and found in plaintiff's favor, to arrive at such a conclusion. *Held :* that the jury having the right, notwithstanding the instruction, to pass upon such questions, and there being positive testimony thereon for the plaintiff, the verdict will not be set aside because the conclusion of this court upon these questions, would, under all the circumstances of the case have been different from theirs. If the refusal to give instructions requested is abstractly justifiable, it is no ground for a new trial that such refusal might have misled the jury, if they had known what the instructions were, it not appearing that they had such knowledge.

In an action alleging that defendants, merchants in New York, hired plaintiff to travel and take orders for, and sell their goods, to be paid by a share of the profits on sales, brought to recover such share, evidence is inadmissible for defendants, that the general custom of merchants in N. Y., and elsewhere, who employ traveling solicitors of trade, is to reserve to themselves the option of filling or rejecting orders taken by such travelers.

Chester B. Dike brought this action in the district court for Rice county, against Hiram Pool, Charles A. Nazro, Richard C. Kimball, A. A. Comstock and F. Clement, Jr., as partners under the name of Pool, Nazro, Kimball & Co. Issue was joined, the defendant Clement answering separately, the other defendants jointly. Trial was had before a jury, who found a verdict for plaintiff for $600. Judgment was entered upon the verdict, from which the defend-

ants appeal to this court. The case is sufficiently stated in the opinion of the court.

PERKINS & MOTT for Appellants.

GORDON E. COLE for Respondent.

*By the Court.*—RIPLEY, CH. J.—The complaint alleges, (so far as is material) that defendants hired plaintiff to take orders, and sell goods for them to retail merchants in the West, at prices fixed by them, defendants agreeing to fill the orders, and ship the goods ordered to the parties to whom they were sold by plaintiff, and to pay him for such services one-fourth of the profits on goods sold by him; that pursu· ant to such agreement, plaintiff sold and took orders for goods of retail merchants, at the prices, and on the terms furnished by defendants, and forwarded them to defendants to the amount of $50,000 in value, and that the profits realized on said sales were $4,000; that in violation of their agreement the defendants refused to fill the orders, except to the amount of $20,000, the profits on which were $1600; that he had been paid $300; that in doing said work he laid out and expended $450; that by defendants' neglect to fill said orders, and their failure to perform said contract, he has been damaged in the sum of $700.

The answer of defendants, (except F. Clement) denies each and every allegation of the complaint, and sets up a counter claim of $187.72, to which there is a reply alleging said sum to be part of the $300 given credit for. F. Clement, sued as a partner of the other defendants, answers separately, denying that he is such, averring that he is only employed by the other defendants, partners in trade, to take orders for them for goods to be sold by them, or not, at their option, and that plaintiff was employed by him as a sub-agent, and

Dike v. Pool et al.

to be paid by him, out of the compensation received by him from defendants, one-eighth of the profits on sales so made by defendants on orders obtained by himself and plaintiff jointly, or separately.

At the trial, the judge instructed the jury, that the burden of proof was on the plaintiff, to prove by a preponderance of testimony, the making of the contract set up, its performance by him, and its non-performance by defendants.

The defendants requested him to give the following instructions:

*First.* The plaintiff is entitled to recover, if at all, only for his share of the profits on sales made by the defendants on orders taken by him or by him and the defendant Clement.

*Second.* That said sales were not perfected till said orders were approved and filled by the defendants, and plaintiff cannot recover more than his share of the profits on sales actually consummated by defendants.

*Third.* That under the agreement testified to by the plaintiff, the defendants had the right to refuse orders taken by him at their discretion.

*Fourth.* That, at any rate, before the plaintiff can recover on account of orders taken by him which were not filled by the defendants, he must establish the solvency of the parties from whom such orders were taken.

*Fifth.* The burden of proof in this action is on the plaintiff, and the question, whether the defendants had, or had not the option to reject orders taken by the plaintiff, being at issue, the plaintiff is bound to establish by a preponderance of evidence, that they had not such option, before he can recover a per centage on orders not filled by them.

The court refused to charge any of the foregoing propositions, except the first, and to each refusal and ruling, the

defendants by their counsel, then and there, duly excepted.

In respect to sales of goods, profits cannot be said to be realized, or losses sustained, till a contract has been made which is binding on both seller and buyer, whereby the former is liable for not delivering the goods according to the contract, and the latter for not taking and paying for them.

It appears from the testimony, and the jury seem to have considered that the amounts received by plaintiff were nearly equal, if not quite, to one-quarter of the profits of the goods actually sent upon orders taken by him.

The verdict is in respect to those, *as to* which the goods were not sent.

But to take the orders of those persons for your employers' goods, is not to sell the goods.

The order may not be accepted, and till accepted, may be revoked. If, therefore, plaintiff was only authorized to solicit and take orders, in order to receive more than one-fourth of the profits upon goods actually sold and delivered by defendants, this action must be taken to be brought to recover damages for defendants' breach of contract in failing to fill the other orders, as agreed, whereby no profits were made of which plaintiff would have been entitled to said share.

No evidence was offered of any such agreement, and he insists that the action is not brought to recover damages for its breach, but for a balance of compensation due for services rendered. He does not claim a commission or per centage on the amount of sales, but that he is entitled to one-fourth of the profits on sales.

The defendants, he testifies, refused to hire him on commission. As above remarked, he would appear, by the evidence, to have received his share, or very nearly, of profits

Dike v. Pool et al.

on sales, unless he was authorized by defendants to make for them, and had made, as to their goods, such binding contracts as above mentioned, upon which a profit could arise.  As neither present payment, nor present delivery, are essential to the validity and binding force of such contract, the plaintiff, if so authorized, might have done so, to the amount of $50,000 ; and so far as his right to compensation is concerned, the profit could be said to be realized on each bargain at the time he made it.

The solvency of the buyer would make no more difference in this respect, if the plaintiff acted in good faith, than if he had been authorized to sell and deliver the goods · on credit, and had done so.

As to the contract of hiring, the defendants allege that the firm did not hire the plaintiff—that he was hired by Clement to solicit orders for the firm's goods, the orders to be sent to him, to be by him communicated to the firm, and filled by them if they chose; plaintiff to receive from Clement, one-eighth of the gross profits on all sales the firm should make on orders taken by either, or both of them.

All their evidence is to this.

The verdict negatives this view of the contract, and the jury must have rejected the evidence offered in its support, as they had a right to do, in weighing the testimony as to the contract.  Its nature is therefore to be ascertained from the evidence introduced by plaintiff.  He testifies, that the defendants employed him to sell goods in the West; that he was to have one-fourth of the profits on the sales he made, or one-eighth of the profits on the sales the house made in the West, at his option, and that he elected the former : that he did actually sell goods for the defendants to the amount of $50,000, at the prices, or not less than the prices fixed by them.

Giving this language its proper and accurate legal signification, it imports an authority to bind defendants, and its exercise; and if so used by him, and understood by the jury, it justifies the verdict. And as the defendants saw fit to allow the matter to go to the jury on such general statements, their verdict must stand, unless they were misled by the instruction of the court, although there are circumstances which render it doubtful whether the plaintiff meant the jury to understand, or they understood, that he had authority to bind defendants, and did bind them by his contracts, so that he could be properly said to have made sales of their goods. For instance, he swears to the solvency of the buyers, as if his claim in some way depended upon that, though nothing is said on that subject in the contract as stated by him. His authority to sell appears, *as stated*, to have been without limitation except as to price.

The character of the buyer, whether the sale was to be for cash, or on credit, and on what credit, are not spoken of. All this is at his discretion; yet a letter from the firm to him, introduced by himself, would, in itself, lead to a different conclusion. Nor does the complaint itself naturally import such a contract. The allegation of employment to take orders for, and sell the goods of defendants; of their agreement to fill all orders taken; that he took orders of, and sold goods to retail merchants in good credit; of defendants' failure, contrary to their agreement, to fill orders; of his expenses; the alleging their failure to fill orders as a breach by which he is damaged; are all opposed to the idea of such authority.

These things cannot be said to be alleged by way of inducement. With them, the complaint is good as for damages for breach of defendants' agreement to fill the orders, measured by the profits which would have accrued if the

Dike v. Pool et al.

orders had been filled. In an action to recover one-fourth of the profits realized on actual sales, they are wholly irrelevant. The first instruction given would not aid the jury in discovering what the contract was, as to which the burden was on the plaintiff to prove its existence; its performance by him, and its non-performance by defendants; but there being no evidence that defendants made any agreement with plaintiff to fill all orders taken by him, we cannot suppose that the verdict is for damages for the breach of any such agreement. It is difficult indeed to see how they could give the plaintiff a verdict for six hundred dollars, under the first instruction asked by defendants, and given by the court; for its language taken in any usual and ordinary sense, assumes that plaintiff had neither authority to make sales himself, nor made any; but whether he had such authority, or having it, exercised it, were questions of fact, and the effect of the instruction being to withdraw them from the jury it is erroneous; but being given at the request of the defendants, they cannot complain, and the jury were still at liberty to pass upon those questions, and if the positive evidence of the plaintiff that he was employed to sell defendants' goods, and did actually sell them to the amount of $50,000, satisfied them that he had authority to bind defendants, and did bind them as to third parties, so as to make contracts of sale, upon which profits could be said to have been realized, we ought not to set aside their verdict, because we think it unlikely from the circumstances that such was the case. As to the instructions asked and not given, the refusal of the court below to give them is abstractly justifiable; and though its action might have misled the jury, if within their knowledge, it does not appear that it was, and considering the difference in practice in this respect, it is not to be assumed that it was.

Supposing the court to have intended, according to the natural meaning of the words of the instruction given, that it was no sale *till* the defendants had acted on the order, the next instruction asked might well be refused, for it might be a sale when they accepted the order; actually filling it, that is, as we understand it, sending the goods, need not necessarily be a condition precedent of a sale.

So, according to the plaintiff's testimony, taken literally, he had authority from defendants to make actual sales of their goods for them; the next instruction asked might therefore properly be refused, in the unqualified form in which it was asked to be given.

So, if the plaintiff had such authority, the solvency of the parties buying was wholly immaterial, unless bad faith were shown, nor was any such limitation upon its exercise suggested in the evidence. So, if the action was considered, as under the circumstances it would seem that it must have been, as brought to recover plaintiff's share of profits realized upon actual sales made by him, the issue before the jury was, whether he was authorized to make, and made sales to a certain amount, and what was the rate of profit realized thereon; not whether the defendants had an option to refuse to fill his orders. If he had no authority to bind them by his sales, they could of course refuse to fill his orders, but the issue would be on the authority in this respect.

The defendants asked their witnesses the following question: "What is the general custom of merchants in the city of New York, and elsewhere, who employ traveling solicitors of trade, as to the option of filling or rejecting orders; whether or not such option is reserved to themselves?" The question was objected to by plaintiff, and properly ruled out.

Orders taken by persons employed merely to solicit trade,

Dike v. Pool et al.

might, as a matter of course, be accepted or not at the discretion of their employers, or might be revoked before acceptance: how such traveling solicitors should be paid for their services, would be a matter of bargain between each one, and the man who hired him. Any usage to affect plaintiff, must at least have distinct reference to persons hiring for a share of the profits on sales.

It may well be that the words "*traveling salesman,*" and "*sales,*" have in the course of business come to have a peculiar signification, equivalent to that of a "*solicitor of trade,*" and a "*taking of orders,*" and if it be so, it might have been relevant to show it, but this is not what was attempted.

Judgment affirmed.